```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Sharon Swecker,                :

    Plaintiff,              :

  v.                           :     Case No. 2:08-cv-0746

Dublin City School District,   :     JUDGE HOLSCHUH
et al.,

    Defendants.            :

## ORDER

This case is before the Court by way of a motion to quash filed by non-party Detective Scott Davis of the City of Dublin Police Department. The subject of the motion is a subpoena issued by plaintiff, Sharon Swecker, on January 15, 2010. Responsive and reply memoranda have been filed by Ms. Swecker and Detective Davis, and the defendants have also filed a memorandum. For the following reasons, the motion to quash will be granted.

### I. Background

In this employment-related case, Ms. Swecker, who was at one time employed as an administrative secretary in the human resources department of the Dublin City School District, claims that she was forced to resign from that position amid accusations that she had embezzled district funds. She asserts state law claims for defamation and wrongful discharge, and also asserts a claim under 42 U.S.C. §1983.

On January 15, 2010, she issued a subpoena to Detective Davis commanding him both to appear at a deposition and to bring with him "[a]ll documents and files pertaining to the Sharon Swecker investigation including, but not limited to, electronically stored information." Apparently, the investigation referred to in the subpoena is a police

investigation that had been opened with respect to the embezzlement controversy described in the complaint.

After the case was concluded, Ms. Swecker requested the Dublin Police Department to seal the investigative file pursuant to Ohio Revised Code §§2953.52 *et seq*. The department complied. In his motion to quash, Detective Davis asserts that in order to comply with the subpoena, he would have to violate Ohio law and would subject himself to criminal sanctions by doing so. Understandably, he is reluctant to honor the subpoena and has asked the Court to rule that he is not obliged to comply with it.

II. Discussion

There are a number of potentially conflicting provisions of rules and statutes that apply to this situation. Fed.R.Civ.P. 26(b), of course, allows parties in a civil case pending in a federal court to discover evidence relevant to their claims and defenses. No one argues that the discovery sought by the subpoena is outside the scope of permissible discovery in this case. Fed.R.Evid. 501 provides that in cases such as this one, which are within the jurisdiction of a federal court because the plaintiff has asserted a claim arising under federal law, "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." On the other hand, O.R.C. §2953.52 allows a state court to seal certain records of criminal proceedings and to direct that "the proceedings in the case be deemed not to have occurred." The only reasons for circumventing such an order under state law are set forth in §2953.53, which provides that such records may be made available to the person whose records have been sealed, to a law enforcement officer defending himself or herself in a civil

action relating to that case, and to a prosecuting attorney for certain limited purposes. Section 2953.54 prohibits the release or dissemination of, or making such records available to, any person not employed by the law enforcement agency which has custody of the records, as well as the discussion of their contents. Section 2953.54(B) states that the violation of this duty is a fourth degree misdemeanor. Certainly, one question is whether these state law prohibitions should be recognized by a federal court as legitimate reasons for resisting a subpoena which calls for the production of information relevant to a claim arising under federal law.

Ms. Swecker's responsive memorandum does not directly address this issue. Rather, she has stated that she will forego the production of the file itself, and that she also does not intend to ask Detective Davis any questions about it. She points out, however, that there was newspaper publicity about the case (presumably before the records were sealed) and that she is portrayed in those articles as a criminal. She claims she intends to question Detective Davis solely about the contents of the newspaper reports, some of which reflect statements he made during interviews by reporters. Alternatively, she asks the Court to use its power under Fed.R.Civ.P. 26(c) to order the records unsealed solely for use at the deposition, and to seal them again once the deposition has been concluded. In response, Detective Davis argues that it would be difficult if not impossible to separate questioning about the newspaper accounts of the investigation from questioning about the contents of the investigatory file, especially because his knowledge of the case consists primarily of the contents of the file. Other than confirming that he made the statements attributed to him, which he appears not to deny, he asserts that he would have no relevant testimony to offer which would not involve disclosing the very

material which state law prevents him from disclosing.

To a certain extent, the issues raised by the motion to quash present a false dilemma. Ms. Swecker does not need to subpoena the file in order to see what it contains. O.R.C. §2953.53(D) states that sealed investigatory records "may be made available to the following persons for the following purposes: (1) to the person who is the subject of the records upon written application, and to any other person named in the application, for any purpose ...." This provision appears to confer a mandatory duty on Ohio courts to grant such a request. See <u>Akron v. Frazier</u>, 142 Ohio App. 2d 718 (Summit Co. 2001) (directing the state trial court to grant a joint request made by the subject of the investigation and the defendants in a subsequent civil action to unseal the file so that they could use it in discovery). Consequently, to the extent that Ms. Swecker still wants to see the file, or even to use it at a deposition, all she need do is make a written application and include in her application the names of all of the persons to whom she intends to disclose the file at the deposition. It does not appear that by doing so she vitiates the order sealing the file; rather, she is given the right under state law to control access to it and it remains sealed except to the persons she designates as recipients in her application.

Of course, should she disclose it to persons other than members of a law enforcement agency, she apparently risks their disclosing it more generally, because the persons who may violate §2953.54 are limited to persons employed by a law enforcement agency. Perhaps her alternative request for a protective order can be read to suggest that if she does pursue the records as provided in §2953.53(D)(1) and discloses them to the parties to this case and their counsel in the course of discovery, their further use of the records could be controlled by an appropriate

protective order issued under Rule 26(c). That is probably true, but that precise question is not before the Court because Ms. Swecker has not obtained the records in the manner allowed by state law.

This does not resolve Detective Davis' primary problem, however. Even if Ms. Swecker were to obtain her file and designate him as one of the persons to whom it can be disclosed, a literal reading of §2953.54 might still subject Detective Davis to criminal liability if he testified about it. That section does not refer in any way to the exceptions provided in §2953.53, so that it could be argued that even if the subject of the investigation obtains the records via a written request and designates a law enforcement officer as one of the persons to whom the file will be disclosed, if that officer then discusses the contents of the records, he will have committed a fourth degree misdemeanor. While that is certainly not the most logical construction of this statute, there do not appear to be any Ohio cases interpreting the statute to preclude it from being applied in this way. Further, the Court agrees that to the extent that the deposition questioning will go beyond asking Detective Davis to affirm or deny that he made certain statements attributed to him by the newspapers, he would risk violating this statute by testifying about the progress or scope of the investigation.

Were the statute in question simply a prohibition against disclosure of records which did not call for criminal penalties, the Court would have little difficulty in concluding that the state law did not control, and that the question should be analyzed exclusively under the concept of federal common law. See, e.g., Freed v. Grand Court Lifestyles, 100 F.Supp. 2d 610 (S.D. Ohio 1998). To do so, the Court would have to balance the policy interests served by recognizing the state law privilege against the interests furthered by disclosure. Id. at 614.

Here, the prohibition against disclosure is clearly intended to protect the privacy interests of the subject of the investigation, and because state law explicitly allows that subject to waive the privilege against disclosure in favor both of herself and anyone else she cares to name in a written request for disclosure, there would appear to be no reason to enforce this prohibition against the wishes of the subject of the investigation. That analysis does not completely resolve the issue, however, because the Court is also required to safeguard the interests of non-parties to litigation not to be unnecessarily burdened, oppressed or harassed by discovery. See Fed.R.Civ.P. 26(c), 45(c)(3). The Court deems it oppressive to a non-party to subject himself to potential criminal liability by testifying at a deposition. In some circumstances, if the information is absolutely essential to the litigants in the underlying case and strong federal interests would be served by its disclosure, even the threat of prosecution under state law might not be a sufficiently weighty interest to prevent the Court from ordering disclosure. Of course, the fact that a person performed an act which might otherwise violate state law because ordered to do so by a federal court may well insulate the person from prosecution. At the very least, it raises an interesting question of law under the Supremacy Clause. However, the Court does not view this case as necessitating such an order.

Under the precise circumstances of this case, the Court deems it unnecessarily oppressive to require Detective Davis - a non-party with no stake in the outcome - to testify at a deposition in a way that may subject him to criminal liability. Ms. Swecker may easily avoid this problem by applying to the court which sealed her records for an order unsealing them. Should that occur, Detective Davis would not face potential criminal liability were he to be subpoenaed to testify about

Dublin's investigation. It seems manifestly unfair to allow Ms. Swecker, who stands to gain from this litigation, to preserve her privacy interests in these records (or, more accurately, to be able to obtain Detective Davis' testimony while simultaneously maintaining that interest) at the cost of subjecting him to the risk of prosecution. For that reason, the Court will grant the motion to quash.

### III. Disposition and Order

For the foregoing reasons, the motion of Detective Scott Davis to quash the January 15, 2010 subpoena (#31) is granted.

### IV. Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge